UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
RICHARD N. QUINN,                      :    10 Civ. 8692 (PAE) (JCF)
                                       :
          Plaintiff,                   :         REPORT AND
                                       :       RECOMMENDATION
     - against -                       :
                                       :
DANIEL L. STEWART, DOMINICK ORSINO,    :
THOMAS ROOME, LORRAINE LEVITAS,        :
MARIA KARIMI, CORRECTIONAL MEDICAL     :
CARE INC., COUNTY OF ORANGE,           :
                                       :
          Defendants.                  :
- - - - - - - - - - - - - - - - - - -:
TO THE HONORABLE PAUL A. ENGELMAYER, U.S.D.J.:

     Pro se plaintiff Richard Quinn brings this action under 42

U.S.C. § 1983 against Daniel L. Stewart, Dominick Orsino, Thomas

Roome, Lorraine Levitas, Maria Karimi, Correction Medical Care,

Inc. ("CMC"), and the County of Orange, New York ("Orange County"),

alleging violations of his Eighth Amendment right to adequate

medical care and his First Amendment right to send and receive

legal mail.  On April 2, 2012, the Honorable Paul A. Engelmayer,

U.S.D.J., dismissed Mr. Quinn's claims as to defendants Stewart,

Orsino, Roome, CMC, and Orange County.  In addition, the Court

dismissed with prejudice Mr. Quinn's First Amendment mail tampering

claim and dismissed without prejudice his Eighth Amendment claims

of inadequate treatment for Hepatitis C and for a nasal condition.

All that remains is the plaintiff's Eighth Amendment claim against

defendants Levitas and Karimi alleging inadequate medical care for

1

a brain cyst, a gunshot wound, back pain, and anemia.  These two defendants have now moved for summary judgment.  For the reasons set forth below, I respectfully recommend that the motion be granted.

Background[1]

Mr. Quinn was a pretrial detainee in the custody of Orange County Correctional Facility ("OCCF") at all times relevant to this action.[2]  (Report and Recommendation dated July 26, 2011, at 2).

---

[1] The plaintiff has not filed a responsive statement of undisputed facts as required under Rule 56.1 of the Local Rules of the United States District Court for the Southern and Eastern Districts of New York ("Local Civil Rules"); however, as will be discussed below, a court "may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement." Holtz v. Rockefeller and Co., 258 F.3d 62, 73 (2d Cir. 2001) (internal quotation marks omitted). Unfortunately, the defendants' failure to cite specific portions of the plaintiff's extensive medical records and to compile the exhibits with any apparent order has made this review more difficult.  Nonetheless, the following background is derived from the defendants' Local Civil Rule 56.1 Statement of Undisputed Facts and the record with all ambiguities drawn in favor of the plaintiff. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

[2] Mr. Quinn's claim arises from his incarceration at OCCF from "July 27[], 2010 until [the] present." (Amended Complaint ("Am. Compl.") at 2). According to the defendants, Mr. Quinn was at OCCF from July 27, 2010 until approximately March 25, 2011; July 1, 2011 to August 25, 2011; and September 29, 2011 until May 22, 2012. (Statement of Undisputed Material Facts on Behalf of Maria Karimi, M.D. and Loraraine Levitas Pursuant to Rule 56.1 ("Def. Rule 56.1 Statement"), ¶ 3). He was then transferred to Downstate Correctional Facility and later to Sing Sing Correctional Facility, where he currently resides. (Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Def. Memo.") at 1 n.1).

When he first arrived at OCCF, CMC staff reviewed his medical history and questioned him about medical problems he was experiencing. (Def. Rule 56.1 Statement, ¶ 7; New York General Municipal Law § 50-h Examination of Richard N. Quinn dated Feb. 24, 2011 ("§ 50-h Exam."), attached as Exh. D to Declaration of Shelly L. Baldwin dated Nov. 15, 2012 ("Baldwin Decl."), at 23-24; Deposition of Richard N. Quinn dated July 23, 2012 ("Pl. Dep."), attached as Exh. E to Baldwin Decl., at 29; Central Booking -- Medical dated July 27, 2010 ("Central Booking -- Medical"), attached as part of Exh. F to Baldwin Decl., Docket no. 116-5 at 24-30;[3] CMC Progress Notes dated July 27, 2010, attached as part of Exh. F to Baldwin Decl., Docket no. 116-5 at 15). Mr. Quinn informed the medical staff that he had, among others, a "tumor brain" and anemia, and the medical record notes that the "[i]nmate has numerous medical problem[s]." (Central Booking -- Medical, Docket no. 116-5 at 24).

In approximately 2004, the plaintiff was diagnosed with a non-malignant colloidal cyst on his brain, and treatment prior to his incarceration included monitoring and pain medication. (Def. Rule

---

[3]The defendants have not numbered Exhibit F (medical records) to the Baldwin Declaration and because of its length, the exhibit has been filed as attachments to docket numbers 116 and 117. I will refer to the docket and page numbers provided by the Case Management/ Electronic Case Filing (CM/ECF) system when citing documents in Exhibit F.

56.1 Statement, ¶ 12; § 50-h Exam. at 26-27; Pl. Dep. at 33-36).
According to medical records dated June 1, 2010, Mr. Quinn's doctor
recommended he continue treatment for headaches related to his cyst
with Topomax and Percocet.  (Consultation Notes of Doctor Syed
Nasir dated June 1, 2010, attached as part of Exh. F, Docket no.
117-5 at 11).  However, prior to his incarceration, Mr. Quinn was
no longer prescribed narcotic-level pain medication because he had
tested positive for illegal drugs.  (Pl. Dep. at 89-91; § 50-h
Exam. at 25).

On July 27, 2010, the day Mr. Quinn arrived at OCCF, he was
prescribed Topamax, the same non-narcotic medication that his
doctor had been prescribing prior to his incarceration.  (CMC
Physician's Order dated July 27, 2010, attached as part of Exh. F
to Baldwin Decl., Docket no. 116-1 at 31).  During his time at
OCCF, he was also prescribed Tylenol, Neurontin, and other non-
narcotic level pain medication.  (Pl. Dep. at 84-85, § 50-h Exam.
at 27; Medication Administration Records, attached as part of Exh.
F to Baldwin Decl., Docket nos. 116-1 at 2, 7, 32, 34 and 116-2 at
1-8, 10).

Mr. Quinn has multiple small bullet fragments or shrapnel in
his right arm from a gunshot wound he sustained sometime in the
1980s.  (Def. Rule 56.1 Statement, ¶ 14; Pl. Dep. at 40; Letter of
Robert Greco, MD dated June 28, 2010, attached as part of Exh. F to

4

Baldwin Decl., Docket no. 117-5 at 3). Prior to his incarceration, he was receiving pain medication and wearing a compression sleeve. (Def. Rule 56.1 Statement, ¶ 15; Pl. Dep. at 42-43).

At OCCF, on August 26, 2010, Mr. Quinn was evaluated in connection with pain in his right arm and the records note treatment with "[a]nalgesia" and an intent to "attempt to find elbow sleeve." (CMC Progress Note dated Aug. 26, 2010, attached as Exh. F to Baldwin Decl., Docket no. 116-4 at 41). On several occasions, the plaintiff saw Dr. Calvin Diamond, an outside orthopedic doctor who came to CMC once or twice a month. (Pl. Dep. at 43-44; Def. Rule 56.1 Statement, ¶ 15; Sick Call Request dated Aug. 30, 2010, attached as part of Exh. F to Baldwin Decl., Docket no. 116-5 at 9; Sick Call request dated Oct. 16, 2010, attached as part of Exh. F to Baldwin Decl., Docket no. 116-4 at 31; Sick Call Request dated Oct. 30, 2010, attached as part of Exh. F to Baldwin Decl., Docket no. 116-4 at 24; Sick Call Request dated Nov. 16, 2010, attached as part of Exh. F to Baldwin Decl., Docket no. 116-4 at 17). He received a compression sleeve, and when he told CMC medical staff that the sleeve was too short, a longer sleeve was ordered. (CMC Progress Notes dated Oct. 12, 2010, attached as Exh. F to Baldwin Decl., Docket no. 116-4 at 5). He also sought Liboderm "pain patches" that had been prescribed by his physician prior to incarceration (Sick Call Request dated Aug. 31, 2010,

attached as part of Exh. F to Baldwin Decl., Docket no. 116-5 at 9;
Sick Call Request dated Sept. 1, 2010, attached as part of Exh. F
to Baldwin Decl., Docket no. 116-5 at 8), but because of concern
about the effect of this treatment on a seizure disorder, he was
initially denied the patches (Sick Call Request dated Sept. 3,
2010, attached as part of Exh. F to Baldwin Decl., Docket no. 116-5
at 7; Non-Formulary Medication Request Form dated Oct. 20, 2010,
attached as part of Exh. F to Baldwin Decl., Docket no. 116-1 at
21; CMC Progress Notes dated Dec. 16, 2010, attached as part of
Exh. F to Baldwin Decl., Docket no. 116-4 at 2).  Accordingly, Mr.
Quinn requested and received "analgesic balm," including refills.
(Sick Call Request dated Sept. 3, 2010, attached as part of Exh. F
to Baldwin Decl., Docket no. 116-5 at 7; Sick Call Request dated
Oct. 9, 2010, attached as part of Exh. F to Baldwin Decl., Docket
no. 116-4 at 34; Sick Call Request dated Oct. 30, 2010, attached as
part of Exh. F to Baldwin Decl., Docket no. 116-4 at 24; Sick Call
Request dated Nov. 16, 2010, attached as part of Exh. F to Baldwin
Decl., Docket no. 116-4 at 17; Sick Call Request dated Feb. 9,
2011, attached as part of Exh. F to Baldwin Decl., Docket no. 116-3
at 24).  In January 2011, his request for Liboderm "pain patches"
was approved (Non-Formulary Medication Request Form dated Jan. 5,
2011, attached as part of Exh. F to Baldwin Decl., Docket no. 116-1
at 17), and refills were provided.  (Medication Administration

6

Record dated Jan. 27, 2011, attached as part of Exh. F to Baldwin
Decl., Docket no. 116-2 at 1; Sick Call Request dated Feb. 10,
2011, attached as part of Exh. F to Baldwin Decl., Docket no. 116-3
at 25; Physician's Orders dated Feb. 13, 2011, attached as part of
Exh. F to Baldwin Decl., Docket no. 116-1 at 9).

Mr. Quinn had a pre-existing back condition when he arrived at
OCCF. (Def. Rule 56.1 Statement, ¶ 16; Pl. Dep. at 46).  Prior to
his incarceration, he was prescribed pain medication and was using
a back brace.  (Pl. Dep. at 48, 55).  The back brace was
confiscated when he was arrested (Pl. Dep. at 55); however, his
request to have it returned was approved on August 20, 2010 (Sick
Call Request dated Aug. 19, 2010, attached as part of Exh. F to
Baldwin Decl., Docket no. 116-5 at 11), and Nurse Levitas informed
the Command Staff at OCCF that he was allowed to wear his brace.
(Message of L. Levitas, RN dated Aug. 20, 2010, attached as part of
Exh. F to Baldwin Decl., Docket no. 117-5 at 8).  He also saw Dr.
Diamond about his back problems and received an "abdominal binder."
(Pl. Dep. at 55-56).

When Mr. Quinn told CMC medical staff that he had anemia, a
blood test was conducted.  (Def. Rule 56.1, ¶ 9; § 50-h Exam. at
38; BioReference Laboratories Final Report dated Sept. 14, 2010,
attached to Am. Compl. at 11).  He was provided extra blankets and

clothing because he claimed his anemia made him cold.  (Def. Rule 56.1 Statement, ¶ 10; Pl. Dep. at 43-44).

On August 4, 2010, the plaintiff filed a grievance at OCCF alleging that CMC medical staff was not providing him with prescribed pain medication for (1) a colloidal cyst/brain tumor, (2) anemia, (3) gunshot wound in his right arm, and (4) back problems.  (Grievance Form - Part I, Number 2010-5178 ("Grievance No. 2010-5178"), attached as part of Exh. C to Declaration of Jeb Harben dated April 7, 2011, Docket no. 34).[4]  He sought "proper" pain medication, monitoring for his tumor, a compression sleeve, and an x-ray for his arm.  (Grievance No. 2010-5178).  Nursing Supervisor Levitas submitted a Grievance Response dated August 12, 2010, stating that the medical unit had done everything to meet Mr. Quinn's needs.  (Grievance Response, Number 2010-5178 dated Aug. 12, 2010 ("Grievance Response No. 2010-5178"), attached to Am. Compl. at 25).[5]  She explained that medical records did not confirm a brain tumor and that he was being prescribed Topamax 25mg BID as directed by his neurologist, Dr. Nasir.  (Grievance Response No. 2010-5178).  According to Nurse Levitas, records did not indicate a prescription for a compression sleeve and blood work dated

---

[4] Mr. Quinn has also attached Grievance No. 2010-5178 to his amended complaint but it is difficult to read.

[5] Page numbers for the amended complaint reflect the pagination provided in ECF.

January 27, 2010, indicated no anemia.  (Grievance Response No. 2010-5178).  She also stated that Mr. Quinn did not complain of a back pain when he was seen daily in connection with narcotics and alcohol detoxification.  (Grievance Response No. 2010-5178).  After interviewing Nurse Levitas and reviewing her report, the grievance coordinator denied the grievance. (Grievance Coordinator's Decision Continued, Grievance Number 2010-5178 dated Aug. 16, 2010, attached to Am. Compl. at 22).   Mr. Quinn appealed the denial and the Citizens' Policy and Complaint Review Council affirmed.  (Letter of Daniel L. Stewart dated Sept. 22, 2010, attached to Am. Compl. at 23).

Discussion

    A. Legal Standard for a Motion for Summary Judgment

        1. Rule 56 of the Federal Rules of Civil Procedure

A motion for summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); accord Doninger v. Niehoff, 642 F.3d 334, 344 (2d Cir. 2011).  A material fact is one that "'might affect the outcome of the suit under the governing law.'"  Roe v. City of Waterbury, 542 F.3d 31, 35 (2d Cir. 2008) (quoting Anderson, 477 U.S. at 248). A dispute regarding a material fact is "genuine" where "the evidence is such that a reasonable jury could return a verdict for

the nonmoving party." Anderson, 477 U.S. at 248; accord SCR Joint
Venture L.P. v. Warshawsky, 559 F.3d 133, 137 (2d Cir. 2009).

The moving party bears the initial burden of identifying those
portions of the record that demonstrate "the absence of a genuine
issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317,
323 (1986). "In moving for summary judgment against a party who
will bear the ultimate burden of proof at trial, the movant's
burden will be satisfied if he can point to an absence of evidence
to support an essential element of the nonmoving party's claim."
Goenaga v. March of Dimes Birth Defects Foundation, 51 F.3d 14, 18
(2d Cir. 1995); see Celotex Corp, 477 U.S. at 325. The opposing
party then must come forward with "specific facts showing that
there is a genuine issue for trial." Celotex Corp., 477 U.S. at
324 (internal quotation marks omitted); see Wrobel v. County of
Erie, 692 F.3d 22, 30 (2d Cir. 2012). Where the nonmovant "fails
to make a showing sufficient to establish the existence of an
element essential to that party's case, and on which that party
will bear the burden of proof at trial," summary judgment must be
granted. Celotex Corp., 477 U.S. at 322.

In assessing the record to determine whether there is a
genuine issue of material fact, the court must resolve all
ambiguities and draw all factual inferences in favor of the
nonmoving party. Anderson, 477 U.S. at 255; Vann v. City of New

<u>York</u>, 72 F.3d 1040, 1048-49 (2d Cir. 1995).  Furthermore, papers of a nonmoving party who is proceeding <u>pro</u> <u>se</u> should be read "'to raise the strongest arguments that they suggest.'" <u>Green v. United States</u>, 260 F.3d 78, 83 (2d Cir. 2001) (quoting <u>Graham v. Henderson</u>, 89 F.3d 75, 79 (2d Cir. 1996)); <u>see</u> <u>Fulton v. Goord</u>, 591 F.3d 37, 43 (2d Cir. 2009).  Nevertheless, a <u>pro</u> <u>se</u> litigant's "'bald assertion, completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment.'" <u>Geldzahler v. New York Medical College</u>, 746 F. Supp. 2d 618, 620 n.1 (S.D.N.Y. 2010) (quoting <u>Lee v. Coughlin</u>, 902 F. Supp. 424, 429 (S.D.N.Y. 1995)).

In addition, a party may object if the material supporting or disputing a fact cannot be presented in an admissible form.  Fed. R. Civ. P. 56(c)(2).  Accordingly, "only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." <u>Raskin v. Wyatt Co.</u>, 125 F.3d 55, 66 (2d Cir. 1997).

### 2. <u>Local Civil Rule 56.1</u>

Local Civil Rule 56.1 governs factual statements on motions for summary judgment.  "Each numbered paragraph in the statement of material facts . . . will be deemed to be admitted . . . unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." Local Civ. R. 56.1(c).  Further, "[e]ach statement by the movant or

opponent . . ., including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." Local Civ. R. 56.1(d). Finally, if the moving party seeks summary judgment against a pro se litigant, that party must provide the pro se litigant with notice of the requirements of both Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rule 56.1. Local Civ. R. 56.2. Once provided with this notice, pro se litigants are not excused from satisfying their obligations under Local Civil Rule 56.1. Allen v. City of New York, 480 F. Supp. 2d 689, 703 (S.D.N.Y. 2007).

The plaintiff was notified of his obligations concerning summary judgment when the defendants provided him with copies of both Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rule 56.1. (Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment dated Nov. 15, 2012). Mr. Quinn has not submitted a statement of material fact. Nevertheless, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Local Rule 56.1 statement, but must be satisfied that the citation to evidence in the record supports the moving party's assertion. Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). Where the court's independent review of the record yields evidence contrary to a

given assertion in the moving party's Local Rule 56.1 statement, or where a party fails to support an assertion by citing admissible evidence, the court may reject that assertion.   <u>Holtz</u>, 258 F.3d at 73-74.   Conversely, where the moving party's Local Rule 56.1 statement is not contradicted by the court's review of the record, then the party's assertions "will be deemed admitted as a matter of law" for the purposes of a summary judgment motion.   <u>See, e.g.</u>, <u>Chitoiu v. UNUM Provident Corp.</u>, No. 05 Civ. 8119, 2007 WL 1988406, at *1 n.1 (S.D.N.Y. July 6, 2007).

Because Mr. Quinn is proceeding <u>pro</u> <u>se</u>, because summary judgment may not be granted unless a court is satisfied that there is no issue of material fact in dispute, and because the factual record can be reviewed to determine whether there actually are any material factual disputes, I decline to deem the defendants' Rule 56.1 Statement admitted.   First, "[i]t is well-established that 'when [a] plaintiff proceeds <u>pro</u> <u>se</u> . . . a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations.'"   <u>Hemphill v. New York</u>, 380 F.3d 680, 687 (2d Cir. 2004) (second and third alterations in original) (quoting <u>McEachin v. McGuinnis</u>, 357 F.3d 197, 200 (2d Cir. 2004).   Second, "[e]ven when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law."   <u>Vermont Teddy</u>

Bear Co., 373 F.3d at 242.   Third, a court may, in its discretion,

consider the entire record: "The court need consider only the cited

materials, but it may consider other materials in the record."

Fed. R. Civ. P. 56(c)(3); Holtz, 258 F.3d at 73 ("[W]hile a court

is not required to consider what the parties fail to point out in

their Local Rule 56.1 statements, it may in its discretion opt to

conduct an assiduous review of the record even where one of the

parties has failed to file such a statement." (internal quotation

marks omitted)).   Finally, a court has "broad discretion to

determine whether to overlook a party's failure to comply with

local [] rules." Holtz, 258 F.3d at 73.   I will therefore examine

the record to determine whether there are any triable issues of

material fact that support a denial of summary judgment,

notwithstanding the fact that the plaintiff did not follow Local

Civil Rule 56.1.

   B. Medical Care Claim

   To state a claim under 42 U.S.C. § 1983, Mr. Quinn must show

that, "(1) the challenged conduct was attributable at least in part

to a person who was acting under color of state law and (2) the

conduct deprived the plaintiff of a right guaranteed under the

Constitution of the United States." Snider v. Dylag, 188 F.3d 51,

53 (2d Cir. 1999).   Mr. Quinn claims that, while he was

incarcerated, the defendants acted with deliberate indifference to

14

his serious medical condition in violation of his constitutional rights.

Since Mr. Quinn was a pretrial detainee at the time of the alleged constitutional violation, his claim arises under the Due Process Clause of the Fourteenth Amendment.   A deliberate indifference claim under the Fourteenth Amendment is analyzed under the same standards as a claim arising under the Eighth Amendment. Caiozzo v. Koreman, 581 F.3d 63, 72 (2d Cir. 2009) ("Claims for deliberate indifference to a serious medical condition . . . of a person in custody should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment."). Accordingly, Mr. Quinn "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976); Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir. 2000).   This requires a showing of both objective and subjective elements. Wilson v. Seiter, 501 U.S. 294, 298 (1991); Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998); Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994).

To satisfy the objective element, "the alleged deprivation must be, in objective terms, 'sufficiently serious.'" Hathaway, 37 F.3d at 66 (quoting Wilson, 501 U.S. at 298).   This analysis entails two parts.   "'The first inquiry is whether the prisoner was

actually deprived of adequate medical care,' keeping in mind that only 'reasonable care' is required." Poindexter v. Davis, No. 11 Civ. 2928, 2012 WL 5465465, at *3 (S.D.N.Y. Nov. 9, 2012) (quoting Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006)). The second inquiry "'asks whether the inadequacy in medical care is sufficiently serious' by examining 'how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." Id. (quoting Salahuddin, 467 F.3d at 280).

"Because '[t]he objective component of an Eighth Amendment claim is . . . [necessarily] contextual' and fact specific, the serious medical need inquiry must be tailored to the specific circumstances of each case." Smith v. Carpenter, 316 F.3d 178, 185 (2d Cir. 2003) (alteration in original) (internal citation omitted) (quoting Hudson v. McMillian, 503 U.S. 1, 8 (1992)).  If the plaintiff claims a complete failure to provide treatment, the court examines the seriousness of the plaintiff's medical condition. Id. at 185-86.  If the plaintiff claims inadequate or delayed medical treatment, "both the underlying condition and the seriousness of any deficiency in care are assessed." Poindexter, 2012 WL 5465465, at *3 (citing Salahuddin, 467 F.3d at 280). "[I]t's the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the

prisoner's underlying medical condition, considered in the abstract, that is relevant." Smith, 316 F.3d at 186. For example, failure to provide treatment for an otherwise insignificant medical issue may violate the Constitution if the lack of treatment results in a substantial risk of injury. Id. On other hand, even if a plaintiff suffers from a serious medical condition, if the alleged mistreatment is minor and inconsequential, then there is no constitutional claim. Id. at 186-87.

While "[t]here is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's condition," relevant factors include, "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003) (quoting Chance, 143 F.3d at 702).

To satisfy the subjective element, there must be a showing that the official acted with a sufficiently culpable state of mind. Farmer v. Brennan, 511 U.S. 825, 837 (1994); Hathaway, 37 F.3d at 66. The official must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference."

<u>Farmer</u>, 511 U.S. at 837.   An "'inadvertent failure to provide adequate medical care' does not constitute 'deliberate indifference.'"   <u>Fulmore v. Mamis</u>, No. 00 Civ. 2831, 2001 WL 417119, at *7 (S.D.N.Y. April 23, 2001) (quoting <u>Estelle</u>, 429 U.S. at 105-06).  "Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." <u>Estelle</u>, 429 U.S. at 106; <u>see</u> <u>Fulmore</u>, 2011 WL 417119, at *7 & n.22 (collecting cases).

Here, the plaintiff alleges that the defendants acted with deliberate indifference by refusing to provide him "proper" treatment for his cyst, his arm, his back, and his anemia.  Since Mr. Quinn received treatment for all the medical problems at issue in this case, his claim is more appropriately characterized as challenging the adequacy of treatment rather than a failure to treat.  The defendants contend that Mr. Quinn has failed to establish a "serious medical need" that is causally linked to the alleged inadequate treatment.  (Def. Memo. at 6-7).  According to the defendants' medical expert, the alleged shortcomings in the treatment provided by the defendants caused no harm to Mr. Quinn. (Expert Affidavit of John McNelis, M.D. dated Nov. 15, 2012 ("McNelis Aff."), attached as Exh. J to Baldwin Decl., ¶¶ 4, 11-12).  The record is consistent with this finding, and the plaintiff

18

has not demonstrated how the medical treatment provided by the defendants placed him at risk of serious harm. <u>See</u> <u>Smith</u>, 316 F.3d at 187 ("[I]n most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm."). Accordingly, Mr. Quinn has failed to make a showing that the he suffered a sufficiently serious deprivation.

Mr. Quinn also fails to establish that the defendants acted with the requisite culpable state of mind. The records indicate that the defendants were attendant to the plaintiff's medical issues. Indeed, when Mr. Quinn requested treatment, the medical staff responded. For example, when he alerted the medical staff of his cyst, he was prescribed Topamax, the same medication he was receiving prior to his incarceration. When he informed OCCF of his arm and back pain, he was seen by an outside orthopedic doctor on several occasions and was provided treatment, including analgesic balm, Liboderm "pain patches," a compression sleeve, a back brace, and an abdominal binder. A blood test was ordered when he notified the medical staff of his anemia, and he was provided extra blankets and clothing when he claimed the condition made him cold. According to the defendants' medical expert, the treatment provided

by the defendants was appropriate and "within acceptable standards of care." (McNelis Aff., ¶¶ 4, 6-11).

Although Mr. Quinn may disagree with the treatment he received, "mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." Chance, 143 F.3d at 703; see also Hill v. Curcione, 657 F.3d 116, 123 (2d Cir. 2011) ("It has long been the rule that a prisoner does not have the right to chose his medical treatment as long as he receives adequate treatment."). While there may be "certain instances, [where] a physician may be deliberate indifferent if he or she consciously chooses an easier and less efficacious treatment plan than otherwise available, failure to provide the more efficacious treatment . . . does not, without more, rise to the level of deliberate indifference." O'Connor v. McArdle, 217 F. App'x 81, 83 (2d Cir. 2007) (internal quotation marks and citations omitted) (collecting cases). In light of the amount of care that Mr. Quinn was receiving, there is no evidence that any inadequacy or delay in his treatment was a result of deliberate indifference

sufficient to make out a constitutional claim.  Therefore, I recommend that the defendants' motion be granted.[6]

C.   <u>State claims</u>

Because the defendants should be granted summary judgment on the plaintiff's federal claims, I recommend declining supplemental jurisdiction over any state claims.  <u>See</u> <u>Rowe v. Jaqdamba, Inc.</u>, 302 F. App'x 59, 62-63 (2d Cir. 2008); <u>Marcus v. AT&T Corp.</u>, 138 F.3d 46, 57 (2d Cir. 1998).

<u>Conclusion</u>

For the reasons set forth above, I recommend that the defendants' summary judgment motion (Docket no. 110) be granted. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Paul A. Engelmayer, Room 660, 500 Pearl Street, New York, New York 10007, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

---

[6] Since I recommend granting summary judgment for the defendants on the merits of the plaintiff's claim, I will not address the defendants' argument that Dr. Karimi was not directly involved in Mr. Quinn's care.

Respectfully submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          December 13, 2012

Copies mailed this date to:

Richard N. Quinn
DIN No. 12A2249
Sing Sing Correctional Facility
354 Hunter Street
Ossining, NY 10562-5442

Constantine Pavlos, Esq.
Shelly Baldwin, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
150 East 42nd Street
New York, New York  10017